IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| Charles Andrae Grayton, #299555, ) | C/A NO. 8:11-2576-CMC-JDA |
| Petitioner, ) | |
| ) | **OPINION and ORDER** |
| v. ) | |
| Warden Lieber Correctional Institution, ) | |
| Respondent. ) | |

This matter is before the court on Petitioner's *pro se* application for writ of habeas corpus, filed in this court pursuant to 28 U.S.C. § 2254.

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(c), DSC, this matter was referred to United States Magistrate Judge Jacquelyn D. Austin for pre-trial proceedings and a Report and Recommendation ("Report"). On May 30, 2012, the Magistrate Judge issued a Report recommending that Respondent's motion for summary judgment be granted and this matter dismissed with prejudice. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Petitioner filed objections to the Report on July 19, 2012.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by

1

the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b).

After conducting a *de novo* review as to objections made, and considering the record, the applicable law, the Report and Recommendation of the Magistrate Judge, and Petitioner's objections, the court agrees with the conclusion of the Magistrate Judge that Respondent is entitled to summary judgment. However, the court declines to adopt the portions of the Report relating to Petitioner's procedural default of Grounds One and Two (except relating to Petitioner's inability to establish cause and prejudice or, in the alternative, a miscarriage of justice) and believes the discussion regarding equitable tolling should be expanded. Therefore, the court adopts the Report's discussion of the Background of this matter (pages 2 through 5 of Report); the Applicable Law (pages 6 through 15); the Report's discussion relating to the expiration of the Limitations Period (page 16); the Report's discussion and analysis relating to cause and prejudice and/or miscarriage of justice on pages 20 through 22; and the discussion and analysis pertaining to Petitioner's Third Ground for Relief (pages 22 through 25).

### EQUITABLE TOLLING

The Report concludes that the petition is untimely. Petitioner's arguments notwithstanding, this court agrees with the Report, as none of the triggering events listed in § 2244(d)(1) applies to Petitioner's circumstance.[1] However, even if the Petition is untimely under the statutory deadline,

---

[1] the limitation period runs from the latest of:

(A) the date on which the judgment of conviction becomes final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the

2

"2244(d) is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. ___, 130 S.Ct. 2549, 2563 (2010). A movant is entitled to equitable tolling only if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing. *Id.* at 2562; *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). The determination whether a circumstance warrants equitable tolling is made on a case-by-case basis. *Holland*, 560 U.S. at ___, 130 S. Ct. at 2563 (quoting *Baggett v. Bullitt*, 377 U.S. 360, 375 (1964)).

"[T]he circumstances of a case must be 'extraordinary' before equitable tolling can be applied . . . ." *Holland*, 130 S. Ct. at 2564. *See also Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (same). While attorney misconduct must be more egregious than a "garden variety claim of excusable neglect" to be considered an extraordinary circumstance, the requirement might be met by a showing of an extraordinary failure by the attorney to provide reasonably competent legal work, to communicate with his client, to implement his client's reasonable requests, to keep his client informed of key developments in his case, or to never abandon a client. *Holland*, 130 S. Ct. at 2562-65.

The Report finds that Petitioner's case "presents a close question of whether Petitioner's failure to timely file his Petition was due to extraordinary circumstances beyond his control . . . ."

---

applicant was prevented from filing by such state action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C § 2244(d)(1).

Report at 19. The undersigned disagrees and believes that this case presents a clear circumstance where equitable tolling applies. Not only did Petitioner's counsel fail to communicate with him, but that failure was as to a key development in his case, and, in fact, counsel abandoned him. If equitable tolling were not applied, counsel's failure would operate to bar Petitioner from the opportunity to present any properly exhausted habeas claims in this court.

In the current case, Petitioner was represented by appointed counsel at his Post-Conviction Relief (PCR) hearing. On December 7, 2007, the PCR court issued an order denying and dismissing Petitioner's PCR application with prejudice.

Through appointed counsel, Joseph L. Savitz, III (Savitz), Petitioner sought review of the denial of PCR via a timely petition for writ of certiorari to the South Carolina Supreme Court. At the time of filing, Savitz was employed by the South Carolina Commission on Indigent Defense in its Appellate Defense Division. On June 27, 2008, Savitz filed and served a brief in support of the petition. ECF No. 20-9 at 7. Notably, when he filed the brief in support of the petition for writ of certiorari, Savitz did not move to be relieved as counsel under the procedure outlined in *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988) (holding where counsel does not find any meritorious issues on PCR appeal, counsel should raise an arguable issue for review and move to be relieved as counsel).

On October 10, 2008, the State filed and served opposition to the petition. ECF No. 20-9 at 11. On January 6, 2009, the South Carolina Supreme Court, pursuant to South Carolina Appellate Court Rule (SCACR) 227(*l*), transferred consideration of the petition to the South Carolina Court of Appeals.

On March 26, 2010, the South Carolina Court of Appeals issued an order denying the petition for writ of certiorari. It appears this order was received by Savitz that same day. *See* ECF No. 1-1

at 3 (copy of cover letter from South Carolina Court of Appeals transmitting denial of petition for writ of certiorari with receipt date marked at March 26, 2010). An intraoffice notation queries "Close?" and appears to contain Savitz's initials indicating his agreement. *Id*.

The remittitur issued from the South Carolina Court of Appeals on April 13, 2010. The remittitur indicates that a copy was served on Savitz and the State. ECF No. 20-13 at 1. Neither the order dismissing the petition nor the remittitur was served on Petitioner.

Sometime between the filing of the petition for writ of certiorari and mid-July 2011, Petitioner "[e]ventually [ ] attempted to contact Mr. Savitz . . . ." ECF No. 44 at 7. On July 15, 2011, Robert M. Dudek (Dudek), Chief Appellate Defender, wrote Petitioner a letter informing him that Savitz had retired and that

> a check of our records shows that Mr. Savitz's petition for writ of certiorari to the Supreme Court on your behalf was denied on March 26, 2010. Upon review of all of our *open files* from Mr. Savitz, it appears that Mr. Savitz signed off for your case to be closed in our office. However, through administrative error, you were not notified of these decisions. . . . I have included an [sic] habeas application for you to fill out and file. This application needs to be filed **very quickly** if you are going to assert equitable tolling against the one year statute of limitations *for lack of notice from Mr. Savitz*.

ECF NO. 1-1 at 1 (italicized emphasis added). Petitioner received this letter on July 16, 2011. *See* Traverse at 7 (ECF No. 44) (arguing that tolling period began to run again on July 16, 2011, "after he was notified of the Court's decision.").

Petitioner filed his § 2254 petition in this court on August 22, 2011. Respondent moved to dismiss based, *inter alia*, on the untimeliness of the petition. Respondent argues that equitable tolling should not apply to cure the petition's untimeliness, quoting *Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007), for the proposition that "[a]ttorney miscalculation is simply not sufficient to

5

warrant equitable tolling, particularly in the post-conviction context where prisoners have no constitutional right to counsel."

The Report agrees with Respondent, finding that "Petitioner relies on an error by counsel Savitz and/or the South Carolina Commission on Indigent Defense Division of Appellate Defense to establish" that equitable tolling should apply. Report at 18-19. However, this case presents more than attorney "error" or "miscalculation"; rather, Petitioner's circumstance is more akin to the circumstance present in *Holland*, *supra*, and *Maples v. Thomas*, __ U.S. __, 132 S. Ct. 912, 924 (2012), where "a client cannot be charged with the acts or omissions of an attorney who abandoned him. Nor can a client be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him."

In this case, Savitz "fail[ed] to satisfy professional standards of care." *Holland*, 130 S. Ct. at 2562. Savitz did not move to be relieved as counsel when he filed the petition for writ of certiorari. At no point thereafter did Savitz move to withdraw as counsel in the Court of Appeals pursuant to SCACR 235, which would have required notice to Petitioner.[2] Savitz thereafter failed to notify Petitioner of the South Carolina Court of Appeals' decision, either after March 26, 2010 (the date of the Order dismissing the petition), or after issuance of the remittitur on April 13, 2010.

---

[2]Respondent argues Petitioner "has not shown that he checked on the status of his PCR appeal until he was notified *late* of the dismissal of the same." Return at 13 (ECF No. 20) (emphasis added). However, Petitioner believed he was represented by counsel, and argues that "S.C. Office of Appellate Defense sends boilerplate correspondence at the initiation of representation that once matters are before the court, it is an indeterminate amount of time before a decision is made, and counsel patience with the process." Traverse at 8. "The diligence required for equitable tolling purposes is 'reasonable diligence' . . . , not 'maximum feasible diligence.'" *Holland*, 130 S. Ct. at 2565 (citations omitted). Here, after purportedly being counseled to be patient (which Respondent does not challenge), Petitioner apparently attempted to contact Savitz, which prompted Dudek's July 15, 2011, letter.

6

Nothing in Dudek's letter indicates when Savitz retired, nor does the letter indicate when a review of Savitz's "open files" occurred.

The law requires "that any resort to equity must be reserved for those rare instances where–due to circumstances external to the own party's conduct–it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). However, equity presents a "resistance to rigid rules," *Holland*, 130 S. Ct. 2563, and Savitz failed to satisfy basic professional standards of care to Petitioner's detriment. The court, therefore, finds equitable tolling appropriate in this circumstance.

### GROUND ONE

Petitioner's first Ground for Relief argues that the trial court lacked subject matter jurisdiction. *See* Petition at 5 (ECF No. 1). The Report finds that Ground One has been procedurally defaulted (see discussion relating to Ground Two, below). However, a review of Petitioner's Traverse indicates that Petitioner has specifically withdrawn Ground One. *See* Traverse at 9 (ECF No. 44). Therefore, Respondent is entitled to summary judgment on this Ground for Relief, and it is dismissed with prejudice.

### GROUND TWO – EXHAUSTION OF STATE COURT REMEDIES

Petitioner's Second Ground for Relief contends that the trial court erred when it excluded Petitioner's proffered testimony relating to an evidentiary ruling. ECF No. 1 at 6. Respondent contends that this Ground "does not allege the violation of any federal constitutional right or any federal statute." Return at 15 (ECF No. 20). Alternatively, Respondent maintains that even if a constitutional argument is present in Ground Two, it was not presented to the state courts, resulting in a default of any federal claim now asserted. Finally, Respondent contends that the South Carolina

Court of Appeals decided this evidentiary issue on state law grounds, and "[i]t is beyond the mandate of federal habeas courts [ ] to correct the interpretation by state courts of a state's own laws." *Sharpe v. Bell*, 593 F.3d 372, 383 (4th Cir. 2010) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

The Report finds that this Ground has been procedurally defaulted, but for a reason not argued by Respondent. The Report finds this Ground defaulted "notwithstanding Respondent's arguments" because "Petitioner failed to raise these grounds for relief to the highest state court." Report at 20. This conclusion is in error.

"[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"-which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 847 (1999). This opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (citing *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) (internal quotation marks omitted)). In other words, the ground must "be presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir.1994) (citation and internal quotation marks omitted).

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy*, 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990). In *McKennedy*, the South Carolina Supreme Court specifically held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court "*outside* of South Carolina's ordinary appellate review procedure

8

pursuant to *O'Sullivan* [ *v. Boerckel*, 526 U.S. 838 (1999)]." 559 S.E.2d at 854.[3]

As the Sixth Circuit noted in *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003), although a rule by a state's highest court indicating that litigants need not file for discretionary review does not "completely remove[ ] state supreme court review as an option for litigants," it does "establish that [state] Supreme Court review is no longer part of the normal course of review for criminal appeals, and is not necessary for exhaustion of 'all available state remedies.' " "[W]hen remedies are taken outside of the normal criminal review process, those remedies become 'extraordinary:' technically available to the litigant but not required to be exhausted." *Id*. at 403 (citing *O'Sullivan*, 526 U.S. at 844).[4]

Because the South Carolina Supreme Court has held that presentation of certain claims to the South Carolina Court of Appeals without more is sufficient to exhaust state remedies, the court finds that Petitioner's claim is not procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the South Carolina Court of Appeals.

As noted above, Respondent argues that Petitioner has failed to present a violation of the Constitution or federal law in his Second Ground for Relief. Petitioner contends that the

---

[3]The *O'Sullivan* Court considered the South Carolina rule enunciated in *In re Exhaustion* as trying to remove South Carolina Supreme Court review as an available state remedy for habeas purposes, but reserved judgment as to whether the rule actually succeeded in doing so. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999).

[4]This, of course, also promotes a principle deemed essential to the *O'Sullivan* ruling and to habeas corpus review in general: comity between the state and federal governments. Comity dictates that the federal courts not ignore a state supreme court's order or rule addressing exhaustion for federal habeas purposes.

9

constitutional dimensions of his claim were presented in his direct appeal to the South Carolina Court of Appeals. *See* Traverse at 9 (ECF No. 44) (citing argument presented to court of appeals which raised a violation of the Sixth Amendment).

Petitioner's argument fails for two reasons. First, "[q]uestions involving the admission of evidence are largely discretionary with the [state] trial judge." *Sligh v. Johnson*, 342 S.E.2d 620, 622 (S. C. Ct. App. 1986) (citing *State v. Atchison*, 268 .E.2d 294 (1977). In this regard, as noted by the Fourth Circuit over forty years ago in the context of habeas review, "the admissibility of evidence . . . in state trials [is a ] matter[ ] of state law and procedure not involving federal constitutional issues. It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented. The role of a federal habeas corpus petition is not to serve as an additional appeal." *Grundler v. North Carolina*, 283 F.2d 798, 802 (4th Cir. 1960). *See also Spencer v. Murray*, 5 F.3d 758, 763 (4th Cir. 1993) (finding that "a claim about the admissibility of evidence under state law rarely is a claim upon which federal habeas corpus relief can be granted.").

Evidentiary rulings will not be considered in federal habeas "unless [the] erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding." *Barbe v. McBride*, 521 F.3d 443, 452 (4th Cir. 2008) (quoting *Burket v. Angelone*, 208 F.3d 172, 186 (4th Cir. 2000)). Thus, the only proper inquiry is whether the admission of the evidence itself so infected the entire trial that the resulting conviction violated due process. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). Indeed,

> [a] federal court in a habeas corpus proceeding should be cautious in setting aside the judgment of a state court where that judgment is based on an interpretation of state law. Where the state law determination is adequate to sustain the state court's

decision, the constitutional issue need not be reached. In such a situation, a federal court should review a state court's decision of a state law issue only where there is reason to suspect that federal rights are being improperly obstructed.

*Sanderson v. Rice*, 777 F.2d 902, 904 (4th Cir.1985) (citing *Wainwright v. Sykes*, 433 U.S. 72, 81, (1977)).

The state appellate court decided this matter of state law, and Petitioner makes no showing that the admission of the evidence resulted in a conviction which violated due process or that there is "reason to suspect that [his] federal rights are being improperly obstructed." *Id*.

Second, although a petitioner need not "cit[e] book and verse on the federal constitution" in order to satisfy the exhaustion requirement, *Picard v. Conner*, 404 U.S. 270, 278 (1971), "it is not enough to make a general appeal to a constitutional guarantee" to have fairly presented a claim to the state court. *Gray v. Netherland*, 518 U.S. 152, 163 (1996). Fair presentation mandates that the federal claim "be presented face-up and squarely. . . . Oblique references which hint that a theory may be lurking in the woodwork will not suffice." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) (internal quotation marks omitted), abrogated other grounds by *Miller-El v. Dretke*, 545 U.S. 231 (2005).

The broad assertion in Petitioner's appellate brief that the trial court's actions allegedly violated Petitioner's Sixth Amendment rights to a fair trial cannot be deemed to have "fairly presented" a constitutional issue in state court.[5]

---

[5]As noted by Respondent, Ground Two for Relief is barred absent a showing of cause and prejudice, or that a miscarriage of justice would occur if this court refused to consider Petitioner's claim. "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir.1999). Actual prejudice is then shown by demonstrating that the error worked to Petitioner's "actual and substantial disadvantage," rather than just creating a possibility of prejudice. *See Satcher v. Pruett*, 126 F.3d 561, 572 (4th Cir. 1997)

For these reasons, therefore, the court finds Respondent is entitled to summary judgment on Petitioner's Second Ground for Relief, and it is dismissed with prejudice.

### GROUND THREE – INEFFECTIVE ASSISTANCE OF COUNSEL

The Report finds that Petitioner is not entitled to relief on his Third Ground for Relief, as he has not shown that the decision of the state court on this issue was a decision which "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [ ] resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

Petitioner's objections on this Ground go to his assertions that his attorney's alleged ineffectiveness is supported by "after-discovered evidence"; that is, a book published in 2009 by the mother of the victim, which Petitioner claims "will establish[ ] the actual innocence of one who is wrongfully convicted." Obj. at 6 (ECF No. 67). Petitioner contends that this material supports his argument that counsel was ineffective in failing to move to exclude from evidence a letter that Petitioner wrote the victim's mother.

In support of his assertion, Petitioner submitted a copy of a book written by Amy Jamison,

---

(quoting *Murray v. Carrier*, 477 U.S. 478, 494 (1986)). "[I]n order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence." *Mikalajunas*, 186 F.3d at 293.

For the reasons noted by the Report, *see* pages 20 through 22, Petitioner cannot meet either of these demanding standards.

titled *What Will It Take? (A Mother's Love)*.[6] This book was first published in 2009, five years after Petitioner was convicted. Assuming that this book was written by the mother of Petitioner's victim, it does not advance Petitioner's declarations of innocence.

**CONCLUSION**

Respondent's motion for summary judgment is **granted** and this petition is dismissed with prejudice. The Clerk shall maintain Exhibit 1 to ECF No. 67 until further order of the court.

**CERTIFICATE OF APPEALABILITY**

> The governing law provides that:
> (c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is **denied**.

---

[6] Amy Jamison, *What Will It Take (A Mother's Love)?* (AuthorHouse, 2009, IBSN: 978-1-4490-5365-9 (sc)).

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie
CAMERON McGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
July 30, 2012